[S. F. No. 8621. In Bank.—December 8, 1919.]

CITY STREET IMPROVEMENT COMPANY (a Corporation), Appellant, v. F. E. PEARSON, Respondent.

[1] Street Law—City and County of San Francisco—Assessment in Excess of Fifty Per Cent Valuation—Omission to Provide for Installment Payments—Void Assessment.—An assessment for street improvement work in the city and county of San Francisco for an amount in excess of fifty per cent of the value of the property as assessed upon the assessment-books at the date of the passage of the resolution of intention was void, where neither the resolution of intention of the board of public works recommending the making of the improvement, nor the ordinance of the board of supervisors ordering the doing of the work, nor any resolution, order, or ordinance of either body declared or provided that the assessment should be paid in installments, as provided by the ordinance of the board of supervisors adopted October 27, 1913, in pursuance of the authority given by section 33, chapter 2, of article VI of the charter of such city and county, providing a procedure for the making of improvements upon streets and assessing the expense thereof upon private property.

[2] Id.—Powers of Boards in Making Street Improvements.—The board of supervisors, and the board of public works of the city and county of San Francisco, in making street improvements and levying assessments under the provisions of the street improvement ordinance of such city and county, act as agents under a special power, and they cannot lawfully act at all except as authorized by the terms of the law under which they act.

[3] Id.—Payment of Assessment in Installments—Duty of Board of Public Works.—In view of the provisions of sections 18 and 28 of the street improvement ordinance of the city and county of San Francisco, it is the duty of the board of public works, if it

is found that the assessment is likely to exceed one-half of the tax valuation of the properties to be assessed, to provide for payment in installments.

[4] ID.—DEPARTURE FROM AUTHORIZED PROCEDURE—JURISDICTIONAL DEFECT—APPEAL TO SUPERVISORS INEFFECTUAL.—In the making of street improvements in the city and county of San Francisco, failure of the board of public works to provide in the resolution of intention for the payment of the assessment in installments where the assessment exceeds fifty per cent of the tax valuation of the property, as required by the street improvement ordinance, cannot be lawfully cured or corrected on appeal to the board of supervisors. The requirement of the ordinance is jurisdictional.

[5] ID.—CURATIVE PROVISIONS—SCOPE OF.—Curative provisions in a law relating to street improvements in cities may cure any defect that does not go to the jurisdiction of the board over the proceeding, and may cure any defect arising from the omission of any step in the proceeding which the legislature might have itself omitted from the law if it be a thing not essential to due process of law, or necessary to comply with some other constitutional prerequisite.

[6] ID.—JURISDICTIONAL MATTERS—INAPPLICABILITY OF CURATIVE PROVISIONS.—Curative provisions in a law relating to street improvements in cities are not to be considered as intended to apply to any one of those preliminary steps in the proceeding which the statute itself requires to be taken whereby jurisdiction of the proceeding is to be acquired by the local board or body in charge thereof, unless such intent is expressly declared, or appears by necessary implication.

[7] ID.—PART PAYMENT OF VOID ASSESSMENT—PROMISSORY NOTE—LACK OF CONSIDERATION.—A promissory note given by a property owner in part payment of a street assessment which was void because in excess of fifty per cent of the assessed valuation of the property, no provision being made for the payment of the assessment in installments, in consideration of the contractor's forbearance to foreclose the lien for ninety days, was without consideration.

[8] CONTRACT—CLAIM WITHOUT FOUNDATION—FORBEARANCE TO SUE—WANT OF CONSIDERATION.—Forbearance to sue or extension of time of payment of a claim that is not doubtful or uncertain, but void, is not a sufficient consideration for a promise.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Adams & Adams for Appellant.

Jesse A. Mueller and Hugo D. Newhouse for Respondent.

SHAW, J.—The plaintiff sued to recover upon a promissory note for $612.77. Defendant answered alleging want of consideration for the note. The court found that it was wholly without consideration and gave judgment for the defendant. Plaintiff appeals.

Plaintiff made certain improvements of the street in front of the defendant's property in San Francisco, under a contract with the board of public works executed in pursuance of the proceedings taken for that purpose. An assessment for the cost thereof was issued to plaintiff. The amount assessed against defendant's property was $1,225.54. Plaintiff demanded payment and threatened to foreclose the assessment if payment was not made. Defendant asked for an extension of time and after some negotiation an agreement was reached whereby defendant paid $612.77, being one-half of the assessment, and executed to the plaintiff the note in suit, payable in ninety days, for the remaining half. The lien of the assessment was not formally released, but plaintiff agreed not to foreclose during the time covered by the note. Both parties at that time believed that the assessment was valid and that it constituted a valid lien on defendant's property, and in that belief the note was given and accepted.

Two questions are presented: 1. Was the assessment void? 2. If it was void, was the note based on a lawful and valuable consideration?

1. The proceedings for the street improvement were taken under an ordinance of the board of supervisors of San Francisco, providing the procedure therefor, under the authority of section 33, chapter II, of article VI, added to the city charter by the amendment of 1913. This section authorizes the board of supervisors to adopt an ordinance providing a method of procedure for the improvement of streets and for an assessment upon private property to defray the expense thereof. It contains the following additional provision: "In such ordinance if said board deems it expedient, provision may be made for the payment of any assessment levied in pursuance of the provisions thereof in annual installments covering a term not to exceed ten years upon (such) conditions as to said board may seem

reasonable and just, the rate of interest to be paid on such payments not to exceed seven per cent per annum. In any proceeding for the improvement of streets wherein provision is made for the payment of any assessment in annual installments, the amount of such assessment shall not be limited by the provisions contained in subdivision three of section 8 of this chapter." (Stats. 1913, p. 1623.) The provisions of subdivision three of section 8, referred to in the foregoing quotation, are as follows: "No assessment shall be levied upon any property, which, together with all assessments for street improvements that may have been levied upon the same property during the year next preceding will amount to a sum greater than fifty per centum of the value at which said property was assessed upon the last preceding assessment-book of the city and county." (Stats. 1899, p. 297.)

In pursuance of the authority given by section 33 aforesaid, the board of supervisors of the city and county of San Francisco, on October 27, 1913, adopted an ordinance providing a procedure to be followed in San Francisco in making improvements upon streets and assessing the expense thereof upon private property. The proceedings in question were taken under this ordinance, and the question to be determined is whether or not they were valid under the ordinance and the aforesaid provisions of the charter. The proceedings for the street improvement were begun by a resolution of expediency adopted by the board of public works on May 20, 1914. The work was completed on March 11, 1915, and the assessment was issued on May 5, 1915. The assessed value of the property of the defendant for the year 1914, that being the year in which the contract for the improvement was let, was $2,260. One-half of this sum, $1,130, was the limit of the amount which the city authorities had power to assess against defendant's property, unless provision was made for the payment thereof in annual installments as provided in section 33 aforesaid. The objection to the assessment is that no such provision was made and that in consequence thereof the assessment is void. The plaintiff, in answer to this proposition, contends that this defect in the proceeding is not jurisdictional, that it could have been cured by the appeal to the board of supervisors provided for in section 21 of the ordinance

fixing the procedure. For the understanding of this question it will be necessary to state in some detail. the provisions of said ordinance.

It is first provided that the board of public works, deeming that public convenience requires a street improvement, the expense of which should be assessed upon private property, shall by resolution declare such expediency, briefly describing the improvement, and cause plans and specifications therefor to be prepared (section 3); that after such plans and specifications are prepared the board "shall pass a resolution of its intention to recommend to the supervisors that said improvements be ordered to be made," referring therein to the plans and specifications and fixing a day for taking action upon the matter, of which day notice shall be given (section 4); that at the time fixed in the notice, if no objections are made, the board of public works shall "pass a resolution recommending to the supervisors that they order such improvements to be made" (section 7); that the supervisors may, in their discretion, order that not exceeding one-half of the expense of the work may be paid out of the city treasury (section 7); that the improvement so proposed may be ordered by the board of supervisors by ordinance adopted in the manner provided by chapter I, article II, of the charter. (Section 7.) When the improvements are thus ordered, bids shall be advertised for and the contract for the work let to the lowest bidder. Section 16 of the ordinance contains a provision as follows: "No assessment shall be levied upon any property, which together with all assessments for street improvement that may have been levied upon the same property during the year last preceding, will amount to a sum greater than fifty per centum of the value at which said property was assessed, exclusive of improvements thereon, upon the assessment-book of the city and county current at the date of the passage of the resolution of intention; except, however, as in this ordinance hereinafter provided." Section 18 provides that if at the time street work is done, none of the methods provided in the ordinance is sufficient to authorize the board of public works to make an assessment to pay for the expense thereof, the board, before it passes "a resolution of its intention to recommend the ordering of said work or improvement," shall establish by resolution

a method by means of which such assessment shall be made, and that when the work is done the assessment shall be made according to the method so established. The ordinance provides in the usual manner for the issuance of an assessment and warrant to the contractor for the expense upon the completion of the work to the satisfaction of the board of public works. Section 28 is as follows:

"Any assessment imposed under the provisions of this ordinance may be paid in annual installments, not exceeding ten in number, whenever the board of public works shall so determine and declare in the resolution of intention or whenever the board of supervisors shall so determine and declare in the ordinance ordering the work, and it shall be mandatory for the board of public works to so determine and declare in every case when the amount of the assessment imposed will exceed one-half of the assessed value of the lot or parcel of land against which such assessment is imposed. Such resolution or ordinance shall state the number of installments in which the assessment may be paid, and the rate of interest to be charged on all deferred payments, which rate of interest shall not exceed seven per centum per annum."

The ordinance further provides that any person aggrieved by any act of the board of public works in the matter, or who claims that the work has not been properly performed, or having any objection to the correctness or legality of the assessment, shall, within thirty days after the date of the warrant, appeal to the supervisors, and that upon such appeal the supervisors may remedy and correct any error in the acts of the board of public works or in the assessment, and cause the said board to correct the warrant, assessment, or diagram in any particular so as to conform to their decision upon the appeal; that the decisions of the supervisors on such appeal "shall be final and conclusive upon all persons entitled to appeal under the provisions of this section as to all errors, informalities, and irregularities which the supervisors might have avoided or have remedied during the progress of the proceedings, or which they can at that time remedy"; and that "no assessment . . . and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the board of

public works to recommend to the supervisors the ordering of the improvement has been actually published and posted and the notices of improvement posted as in this ordinance provided.'' (Section 21.)

[1] The proceedings for this assessment did not conform to the provisions of this ordinance regarding cases in which the assessment amounts' to more than half of the assessed value of the property for general taxation for the current year, as was the case here. Neither the resolution of intention of the board of public works to recommend the making of the improvement, nor the ordinance of the board of supervisors ordering the work to be done, nor any resolution, order or ordinance of either body, declared or provided that the assessment should be paid in installments, or made any provision on that subject. The consequence was that the entire assessment, under the terms of the ordinance, became due and payable immediately upon the issuance of the warrant and a suit to foreclose the same could have been begun at the expiration of thirty-five days thereafter. (Sections 19 and 22.) If the proceedings had been valid, the contractor would have had the right to insist upon this date of maturity.

The above-quoted provision of section 8, chapter II, of article VI of the charter forbids the making of such an assessment in such a case. Section 33, above quoted, qualifies this prohibition so far as to allow an assessment of that amount to be made under a method of procedure ordained by the board of supervisors, if provision is made in the proceeding for the payment of the assessment in installments, but not otherwise. The provision for installment payments can only be made in the manner prescribed in, the procedure ordinance. [2] The board of supervisors and the board of public works, in making improvements and levying assessments under the provisions of an ordinance adopted under section 33, aforesaid, are acting as agents under a special power, and they cannot lawfully act at all, except as authorized by the terms of the law under which they act. They are as much limited by the terms of the ordinance of the supervisors providing the procedure as they would be if they were acting under some street improvement act enacted by the legislature. The ordinance declares that, in order to authorize installment payments, the board of

public works must ''so determine and declare in the resolution of intention,'' or, as an alternative thereto, the board of supervisors must ''so determine and declare in the ordinance ordering the work.'' It is declared to be mandatory that the resolution thus referred to shall so state whenever ''the amount of the assessment imposed will exceed one-half of the assessed value of the lot or parcel of land'' to be assessed. (Section 28.) Furthermore, the provisions of section 18 above mentioned require that the board of public works, if none of the methods provided in the ordinance is sufficient to authorize an assessment to pay for the expenses of an improvement, shall, before it passes the resolution of its intention to recommend the ordering of the work, establish an adequate method for making the assessment. [3] It is difficult to give this section any meaning unless it was intended to require the board of works to look in to the matter at the beginning and provide for installments if it found that the assessment was likely to exceed one-half of the tax valuation on the properties.

[4] The contention that this departure from the authorized procedure could have been lawfully cured or corrected on appeal to the board of supervisors, had such appeal been taken, cannot be sustained. Section 28 of the procedure ordinance, it will be noted, provides that in every case where the assessment will exceed one-half the tax valuation, ''it shall be mandatory'' that the board of works shall first determine, and then declare in its resolution of intention, that payment of the assessments may be made in annual installments. Section 18 of that ordinance, if we interpret it aright, also requires such preliminary determination. And sections 8 and 33 of chapter II, article VI, of the charter, withhold entirely from the two boards the power to make such an assessment, unless it is made in the manner to be prescribed by the procedure ordinance which section 33 authorizes the supervisors to adopt. Under that ordinance, the resolution of intention of the board of public works, together with the notices to be given of the time of taking action thereon, comprise the mode, and the only mode, whereby either of said boards can obtain jurisdiction of such a proceeding, or power to make any assessment. It is very clear from all these provisions that in a case where the necessary assessment for the work will exceed

one-half of the assessed value of the land for the current year, they cannot obtain such jurisdiction or power except by determining to make the assessment payable in annual installments and inserting in the resolution of intention of the board of public works a declaration to that effect. This, of course, could not be done by the supervisors in deciding the appeal. It could not lawfully be done at all after the contract was let, for the contractor would then have a contractual right to immediate payment upon the completion of the work. [5] Curative provisions in a law of this character may cure any defect that does not go to the jurisdiction of the board over the proceeding. It has been said that they may cure any defect arising from the omission of any step in the proceeding which the legislature might have itself omitted from the law, if it be a thing not essential to due process of law, or necessary to comply with some other constitutional prerequisite. (*Ramish* v. *Hartwell,* 126 Cal. 443, [58 Pac. 920]; *Chase* v. *Trout,* 146 Cal. 359, [80 Pac. 81].) As a general proposition, this is a correct statement of the law. The difficulty with its application to the present case is that here the charter, with respect to the powers of the board of supervisors to adopt a procedure ordinance, stands in the place of a constitution; indeed, it is more stringent, for its provisions on this subject constitute a specific grant of power and not a limitation upon powers included in a general grant. The charter says that an assessment for this amount shall not be made, except it be payable in annual installments. The curative provision of the ordinance, if allowed the effect contended for, would, in effect, declare that a valid assessment for this excessive amount can be made, although payable immediately and not in installments, provided no objection thereto is made until after the work is done. The prohibition of the charter against such assessments would thus be evaded and defeated.

[6] We think the general rule of construction with regard to curative provisions of this character is that they are not to be considered as intended to apply to any one of those preliminary steps in the proceeding which the statute itself requires to be taken whereby jurisdiction of the proceeding is to be acquired by the local board or body in charge thereof, unless such intent is expressly declared, or appears by necessary implication. Of course, it could in

no case excuse or cure a want of due process of law. And where several material acts are prescribed for obtaining jurisdiction and are adapted to that purpose, it is difficult to perceive how a general curative clause can be held to apply to any of them. For if it could be applied in one case to excuse the want of one of such acts, it could in another case be made to dispense with another, and so all of them would, one by one, be declared unimportant, and a compliance with any one of them would be sufficient in any case. With respect to the curative provision here involved, we think it must be held that it was not intended to allow a disregard of the jurisdictional acts which the ordinance itself expressly declares shall be mandatory. Our conclusion is that the assessment against the property of Pearson was void. This brings us to the second question.

2. There was no dispute or difference between the parties concerning the existence or nonexistence of any fact, nor regarding the validity or invalidity of the claim of the plaintiff. Both parties acted with the belief, or upon the tacit assumption, that it was a valid demand and an enforceable lien upon the property. So far as the evidence shows neither party knew the amount of the tax valuation for the current year. Even if the claim had constituted a valid lien against the property, it would not have been a personal obligation of the defendant, but a mere lien upon his property, enforceable only by foreclosure. (*Taylor* v. *Palmer,* 31 Cal. 254.) It does not appear that the plaintiff asserted that Pearson was personally liable for the claim. The asserted lien was not released and there was no agreement or understanding that it should be released. The fact that the assessment was more than fifty per cent of the tax valuation was a matter which appears of record and could not be and was not, disputed by either party. **[7]** There was, therefore, no consideration whatever for the note, other than the extension of time to the defendant wherein to pay a claim that he was under no obligation to pay at all, and the corresponding forbearance of plaintiff for ninety days to foreclose the claim of lien which was of no validity and which, if foreclosed and the land sold thereunder, would have given the purchaser no title thereto.

On behalf of the plaintiff it is contended that a promise given in consideration of an extension of time to pay a

demand and a corresponding forbearance to sue during the time allowed, is based upon a good consideration, even if it appears that the demand was of no legal validity, and there was no doubt or dispute concerning the facts upon which it was founded. In support of this proposition a number of decisions are cited. Upon examination we find that each of them comes within the well-established rule that a promise given in consideration of the settlement or compromise of a dispute or controversy, the event of which is uncertain or doubtful, or even in consideration of the forbearance to sue upon or the extension of time of payment of a lawful demand, is founded upon a sufficient consideration. Of the cases cited, the nearest in analogy to the case at bar is *Young* v. *French,* 35 Wis. 111. In that case the defendant was in possession of logs with power to sell them on commission. His sales depended upon his continued possession. The plaintiff claimed a lien against the logs for a demand against the owner and threatened to file such lien. Defendant promised plaintiff to pay his demand if he would refrain from filing the lien, which the plaintiff thereupon did, defendant holding possession of the logs by means of his promise. The decision was expressly put on the ground that the defendant had thus retained possession of the logs and was enabled to exercise his right to sell them on commission, and that plaintiff had relinquished his right to file a claim of lien, and that these respective concessions and benefits were sufficient consideration for the promise. It was said that under these circumstances it was immaterial whether the plaintiff's claim to a lien was valid or not. The decision was correct, but it is not applicable here. Where there has been a compromise of doubtful claims, or concessions and benefits given and received in good faith, as consideration for a promise, the actual validity of the claims is immaterial; otherwise, as remarked by Mr. Wharton, "there could be no compromise of litigation, since there is no litigation in which one or the other party, if the case be pressed to judgment, does not fail to make out his case." (Wharton on Contracts, sec. 533; *McClure* v. *McClure,* 100 Cal. 343, [34 Pac. 822].) **[8]** But in the same section that author states that "a promise to compromise a claim utterly unfounded will not be regarded as a valuable consideration." In Elliott on Contracts, section 235, it is said:

"If the claim threatened to be enforced is invalid or worthless, a promise not to attempt to enforce or to refrain from making trouble concerning it is not a consideration recognized by the law as valuable." In 8 Corpus Juris, at page 238, the rule is stated thus: "The actual forbearance or the promise to forbear to prosecute a claim on which one has a right to sue is a sufficient consideration; but such forbearance is no consideration if it is clear that no action would lie." Other writers state the same doctrine. (1 Beach on Contracts, sec. 176; Bishop on Contracts, sec. 70; 1 Chitty on Contracts, sec. 39; 1 Parsons on Contracts, sec. 441.) An examination of the cases cited by these writers shows that the text is fully supported. There has been no decision of this court precisely on the point involved, but it was presented to the district court of appeal in *Pacific etc. Co. v. Carr,* 29 Cal. App. 722, [157 Pac. 529]. There the plaintiff presented to defendant a claim against a corporation in which the defendant was the principal stockholder. The claim against the corporation was invalid. The defendant agreed to assume the claimed indebtedness and executed a note therefor, and upon its maturity she executed another note in renewal. The action was upon the last note. The court said: "The consideration for her note was the purported obligation of the company upon this contract; but there was no obligation, either express or implied. This being true, it cannot be said there was any consideration for the execution of the note sued upon. Clearly, if suit had been brought upon the contract against the Amritam Company, no recovery could have been had thereon upon a showing of the facts here presented. And if there was nothing upon which to base an action against the Amritam Company, it must follow that plaintiff, in releasing the company from liability which did not exist, suffered no prejudice by reason thereof." And it was said that unless there was some uncertainty or doubt concerning the validity of the claim for which the note was given, it did not come within the category of a compromise of a doubtful or disputed claim and there was no consideration for the new promise. We cite a few of the many cases establishing this doctrine. (*Nicholson* v. *Neary,* 77 Wash. 294, [137 Pac. 492]; *Daniel* v. *Hughes,* 196 Ala. 368, [72 South. 23]; *Ernst* v. *Hollis,* 86 Ala. 513, [6 South. 85]; *Smith* v.

*Easton,* 54 Md. 147, [39 Am. Rep. 355]; *Foster* v. *Metts,* 55 Miss. 82, [30 Am. Rep. 504].) In this case there was no disputed claim, no compromise of a doubtful right, no release of the lien of the plaintiff, and there was no valid claim against the defendant in existence. The claimed lien was wholly without foundation and absolutely void and it constituted no consideration for a promise to pay the demand or any part thereof.

The judgment is affirmed.

Lennon, J., Wilbur, J., and Melvin, J., concurred.

Olney, J., and Lawlor, J., dissented.