[S. F. No. 8807. In Bank.—June 18, 1921.]

FEDERAL CONSTRUCTION CO. (a Corporation), Respondent, v. FERDINAND WOLFSON et al., Appellants.

[1] STREET LAW—SAN FRANCISCO ORDINANCE—ASSESSMENT IN EXCESS OF ONE-HALF OF ASSESSED VALUATION—WHEN VOID—CHARTER.—A street assessment for improvements made under the provisions of the Street Improvement Ordinance of San Francisco enacted under section 33 of chapter 2, article VI, of the charter, exceeding one-half of the value at which the property was assessed, exclusive of improvements, is prohibited by subdivision 3, section 8, chapter 2, article VI, of the charter, and is unauthorized and void, unless provision is made for the payment of the assessment in annual installments, deferred payments bearing interest at a rate not greater than seven per cent per annum.

[2] ID. — PAYMENT IN ANNUAL INSTALLMENTS — COMPLIANCE WITH CHARTER. — In a proceeding under the Street Improvement Ordinance of San Francisco, provision for the payment of an

assessment exceeding one-half of the assessed value of the property in three installments, one at the date of the delivery of the bond for the assessment, the others in equal installments in one and two years, respectively, is a compliance with the requirement of the charter amendment of 1913 that the payment of the assessment shall be in annual installments when the assessment is in such an amount.

[3] ID.—TERMS OF PAYMENT OF ASSESSMENT IN INSTALLMENTS—DETERMINATION OF SUPERVISORS—WHEN CONCLUSIVE.—Under section 33, chapter 2, article VI, of the San Francisco charter, which expressly authorizes a street assessment for more than fifty per cent of the assessed valuation of the property when provision is made by the supervisors for the payment of the assessment in annual installments upon terms that they may determine to be reasonable and just, it is primarily for their determination whether the provision made is a just and reasonable one, and if it may fairly be said to be incidental to the regulation of the payment by installments, the determination is conclusive upon the court.

[4] ID.—GIVING OF BOND FOR ASSESSMENT—WAIVER OF IRREGULARITIES IN PROCEEDINGS—REASONABLE AND JUST REQUIREMENT.—The requirement of the board of supervisors in a proceeding under the Street Improvement Ordinance of San Francisco that the property holder shall sign a bond for the assessment waiving irregularities in the proceedings is not unreasonable or unjust, as a condition precedent to the issuance of a bond payable in installments within the provisions of the charter authorizing the payment of an assessment in annual installments upon such terms as may be just and reasonable, when the assessment exceeds fifty per cent of the valuation of the property.

[5] ID.—SEMI-ANNUAL PAYMENT OF INTEREST—VALID REQUIREMENT.—The requirement of the board of supervisors of San Francisco in a proceeding under the Street Improvement Ordinance that the payment of seven per cent interest on the assessment be made semiannually is not violative of section 33, chapter 2, article VI, of the charter, which provides that the payment of a street assessment exceeding one-half of the assessed valuation of the property shall be made in annual installments, deferred payments bearing interest at a rate not greater than seven per cent per annum.

[6] ID.—FAILURE TO GIVE BOND—IMMEDIATE RECOVERY OF ENTIRE ASSESSMENT—RIGHT OF CONTRACTOR.—In view of section 35 of the Street Improvement Ordinance of San Francisco, which expressly provides that in the event of a void or faulty bond given for the assessment, or where the bond is not given by the owner, the contractor may sue to recover the assessment, and in view of the express declaration that the assessment creates a lien upon the property for the full amount thereof, the contractor may, where

the owner fails to give a bond, institute suit for the entire amount of the assessment at any time after demand as provided in such section, notwithstanding the assessment is payable in annual installments.

[7] ID. — FORECLOSURE OF LIEN — PLEADING — STREET IMPROVEMENT ORDINANCE—SUFFICIENCY OF COMPLAINT.—A complaint in an action to recover upon a street assessment for work done under the Street Improvement Ordinance of San Francisco, which does not expressly set out the ordinance *in haec verba,* nor directly allege its passage on a certain date, but which merely alleges that proceedings were had under and in pursuance of the provisions of a certain ordinance, giving number, title, and date of passage, is not sufficiently defective to justify a reversal where the terms of the ordinance appear in the record on appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hugo D. Newhouse, Russell P. Tyler and Charles W. Cobb for Appellants.

Frank W. Sawyer, *Amicus Curiae,* for Appellants.

H. K. Eells, A. C. H. Hart and Raymond Benjamin for Respondent.

Randolph V. Whiting, Fabius T. Finch, Paul F. Fratessa and John B. Gartland, *Amici Curiae,* for Respondent.

WILBUR, J.—Plaintiff seeks to recover upon a street assessment levied by the board of public works of the city and county of San Francisco for the improvement of Fifteenth Avenue, between Fulton and Balboa Streets. Plaintiff recovered judgment and defendants appeal. The proceedings for the improvement of said street were had under the provisions of a street improvement ordinance enacted under the power conferred by section 33 of chapter 2, article VI, of the charter of San Francisco (Stats. 1911, p. 1691; Stats. 1913, pp. 1482, 1483, 1623), which ordinance is referred to in the case of *Bienfield* v. *Van Ness,* 176 Cal. 585, [169 Pac. 225], and will be hereafter referred to as the ''Street Improvement Ordinance.'' The assessment in

question exceeded one-half of the value at which the said property was assessed, exclusive of improvements thereon, on the assessment-book of San Francisco current at the date of the passage of the resolution of intention. [1] Such an assessment is prohibited by subdivision 3, section 8, chapter 2, article VI, of the charter of San Francisco, and was unauthorized and void (*City Street Imp. Co.* v. *Pearson,* 181 Cal. 640, [185 Pac. 962]), unless provision was made in the proceedings for the payment of the assessment in annual installments, deferred payments bearing interest at a rate not greater than seven per cent per annum (sec. 33, *supra;* Street Improvement Ordinance, sec. 16).

By amendment to the charter, adopted in 1913 (art. VI, c. 2, sec. 33, Stats. 1913, p. 1602), it was provided that the board of supervisors were authorized to provide in their Street Improvement Ordinance for such payment in installments, the language of that section of the charter on that subject being as follows: " . . . If said board deems it expedient, provision may be made for the payment of any assessment levied in pursuance of the provisions thereof in annual installments covering a term not to exceed ten years upon conditions as to said board may seem reasonable and just, the rate of interest to be paid on such payments not to exceed seven per cent per annum. In any proceeding for the improvement of streets wherein provision is made for the payment of any assessment in annual installments, the amount of such assessment shall not be limited by the provisions contained in subdivision three of section 8 of this chapter." Acting under this power the board of supervisors in its Street Improvement Ordinance provides that the payment of the assessment may be made in annual installments, "whenever the board of public works shall so determine and declare in the resolution of intention or whenever the board of supervisors shall so determine and declare in the ordinance ordering the work, and it shall be mandatory on the board of public works to so determine and declare in every case when the amount of the assessment imposed will exceed one-half of the assessed value of the lot or parcel of land against which such assessment is imposed. Such resolution or ordinance shall state the number of installments in which the assessment may be paid, and the

rate of interest to be charged on all deferred payments, which rate of interest shall not exceed seven per cent per annum." (Sec. 28, Street Improvement Ordinance of San Francisco.)

The petition for transfer to this court after decision in the district court of appeal, first appellate district, was based upon the claim that the assessments were void because not payable in annual installments, and this contention was in turn based upon the proposition that such provision as was made for deferred payments of installments of the assessments was invalid because conflicting with the charter. The petition was granted because the effect of a failure to make provision for payment of annual installments was under consideration in the case of *City Street Imp. Co.* v. *Pearson, supra,* since decided.

After our decision of the case a rehearing was granted. We held that the provision in the Street Improvement Ordinance with reference to the payment in annual installments was not a sufficient compliance with the duty imposed upon the supervisors by section 33, *supra,* to take the assessment out of the provision of section 8 of the same chapter, declaring such assessments to be void when in excess of one-half of the assessed value. Inasmuch as this decision invalidated every bond issued under the Street Improvement Ordinance of San Francisco where the amount of the assessment exceeded one-half of the assessed value of the lot (sec. 8, *supra; City Street Imp. Co.* v. *Pearson, supra*), a rehearing was granted to enable us to further consider the effect of that portion of section 33, *supra,* giving the board of supervisors power to fix the conditions for the payment of the annual installments. The clause particularly referred to is above set forth and is as follows: "upon conditions as to said board may seem reasonable and just . . . " We will now proceed to a consideration of that question.

In its resolution of intention to perform the work for which the assessment herein was levied the board of public works provided that such assessment should be paid in three annual installments with seven per cent interest per annum on all deferred payments. The detailed provisions for such payment is contained in the Street Improvement Ordinance. This ordinance makes no provision for an assessment payable in installments, but does provide that the owner may

by giving a writing, denominated a bond, for the payment of said street assessment, secure the privilege of paying the same in annual installments, the first installment being payable at the date of the delivery of the bond, the bond must be executed and filed in the office of the board of public works within thirty days from the date of the demand made upon the property holder, or if an appeal is taken, within twenty days after decision on appeal. The form of the bond is set forth in the Street Improvement Ordinance. It recites the proceedings instituted for the improvement of the particular street, acknowledges and admits the validity and regularity of such proceeding and promises to pay to the contractor or order the assessment in the number of annual installments therein set forth, which installments in time of payment and amount were to correspond with the installments provided by the board of public works in its resolution of intention for the improvement of the particular street involved. In the event of the default in the payment of any installment or any interest according to the terms of the bond all said installments of principal and interest thereon become immediately due and payable, and the board of public works is authorized to sell the property herein described and pay the amount so due, together with the expense of such sale, in accordance with the law for the sale of real property upon execution and after notice as therein provided for. The bond further provides: "That a lien for the full amount of the sum obligated to be paid under this bond, principal, interest and costs, is hereby created and acknowledged upon, in and to the real property described herein and the improvements thereon and appurtenances thereto."

In the case at bar to comply with street improvement ordinance and with the resolution of intention to improve Fifteenth Avenue the first installment of the assessment was to be paid at the time of delivery of the bond, the second one year, and the third two years thereafter, "together with interest on each assessment at the rate of seven per cent per annum," interest to be paid semi-annually six months from the date of the bond and every six months thereafter. The appellants claim that the proceedings are invalid, first, because it is claimed the mandatory provisions of the charter and the ordinance requiring the assessment

to be paid in annual installments are not complied with by the provision that the property holder may secure the privilege of paying in such annual installments by the execution of the bond in question; second, because the amount of interest on the deferred installments is limited by the charter (sec. 33, *supra*) and by the Street Improvement Ordinance (sec. 28) to seven per cent per annum, and because the interest was required to be paid semi-annually and such requirement is in effect an increase of the rate above seven per cent per annum.

Recurring to a consideration of the first point. The discretion of the board in enacting its ordinance is limited by the requirement that the installments shall be annual and cover terms not to exceed ten years and bear interest not to exceed seven per cent per annum. [2] The provisions for the payment of an assessment in three installments, one at the date of the delivery of the bond, the others in equal installments in one and two years, respectively, was a compliance with the requirement that the installments should be annual. The purpose of the enactment was to give the property holder more time in which to pay the larger amounts. Ordinarily, the entire payment was made upon demand. By postponing two installments for one and two years the purpose sought to be accomplished by the act was achieved.

Was the requirement that the property holder sign a bond, waiving irregularities in the proceedings, unreasonable or unjust?

[3] In answering this question it is to be observed that we are dealing with the legislative power vested in the board of supervisors by the charter and that it is primarily for their determination whether the provision made is reasonable and just. In this particular instance the charter expressly authorizes an assessment for more than fifty per cent of the assessed value of the lot, when provision is made by the supervisors for the payment of the assessment in annual installments upon terms that they may determine to be reasonable and just. If the provision for the issuance of a bond may fairly be said to be incidental to the regulation of the payment by installments, then the determination of the supervisors is binding upon this court. If, however, such requirement has no legitimate connection with the

regulation of the method and manner of paying in installments, then the determination by the board of supervisors that such a provision was reasonable and just would not be binding upon the court. In determining this question it is proper to observe that the legislature of the state in the Local Improvement Act of 1901 [Stats. 1901, pp. 34, 38, sec. 13], provided for a very similar written waiver on the part of the property holder, upon giving which the assessment for the improvement of a street was to be paid in installments. This provision is as follows:

"Sec. 13 . . . provided, however, if at or before the time fixed in the notice of sale the owner of any parcel shall file with the tax collector a written agreement, waiving all objections, of whatsoever kind or nature, against the assessment and all proceedings with reference to the same, and undertaking to pay the assessment on his parcel in yearly installments not to exceed ten in number, the first of which shall be paid at the time said agreement is filed, and the others annually thereafter, one each year, at the time when the first installment of municipal taxes within said municipality is payable, with interest on all deferred payments at the rate of —— per cent per annum, being the same rate fixed by the resolution provided for in section five above for deferred payments, payable at the same time as the installments of principal, then, and in that event, the tax collector shall mark upon the record of the assessment, opposite the respective descriptions or numbers of such parcels, memoranda to the effect that time has been given; said waivers and undertakings shall be taken upon printed forms provided by the tax collector, bound in a substantial book and kept among the records of his office; said agreement shall contain a provision to the effect that in case of default in payment of any installment of principal provided for therein, or interest accrued on deferred payments, at the time called for by said agreements, then, in that event, the entire remaining unpaid installments shall become immediately due and payable, and the tax collector shall then forthwith, upon twelve days' written notice mailed to the last known address of the party, sell the property covered by the delinquent payment to realize the entire unpaid balance of said installments, with accrued interests and costs of sale; provided, the same have not been paid before

the expiration of said twelve days. At such sale the municipality may be a bidder; said agreement shall provide that the entire unpaid balance may be paid at any time before maturity, together with interest on all deferred payments, until the date of maturity of the installment of principal next falling due.''

The board of supervisors of San Francisco were expressly authorized by section 33, *supra,* of the charter to adopt this or any other state law for the improvement of streets in lieu of the charter plan for such improvement. That portion of the section referred to is as follows: ''Sec. 33. The method of procedure in this article . . . shall not be deemed exclusive, but the board of supervisors by an affirmative vote of not less than two-thirds of the members thereof, may by ordinance substitute therefor any method of procedure in any general law of the state of California now in force and effect, or as the same may be amended or that may hereafter be enacted, providing for any such improvements in municipalities, and levying assessments for the expense or portion thereof upon private property; . . .'' then follows the portion of the section hereinabove quoted. The closing sentence, it will be observed, is as follows: ''In any proceeding for the improvement of streets wherein provision is made for the payment of any assessment in annual installments, the amount of such assessment shall not be limited by the provisions contained in subdivision 3 of section 8 of this charter.''

If the board of supervisors of San Francisco had by ordinance adopted the Local Improvement Act of 1901 with the foregoing provisions in regard to the payment of the assessment in installments, would it be contended that the statutory scheme so adopted did not make provision for the payment of assessments in annual installments within the meaning of that expression as used in the concluding sentence of section 33? If the answer is ''no,'' then it would follow that the making of a substantially identical provision in the street improvement ordinance of San Francisco was also a provision for the payment in annual installments. Indeed, the fact that such a plan was already on the statute books and that the board of supervisors was expressly authorized to adopt that plan would seem to indicate that this particular method of paying an assessment in annual in-

stallments was within the contemplation of the framers of the amendment to the charter and of the legislature in approving the same. Section 33 of the charter, *supra,* was under consideration by this court in *Hayne* v. *San Francisco,* 174 Cal. 185, [162 Pac. 625]. In this case the court emphasized the fact that the power of the board of supervisors in adopting a procedural ordinance was to be construed in the light of its power to adopt state laws already in force for the making of similar improvements. In that connection the court made the following statement. (174 Cal. 191, [162 Pac. 628]):

"Section 33, above quoted, authorizes the supervisors to adopt the procedure prescribed in article VI of the charter, or 'any method of procedure in any general law of the state,' or to enact an ordinance prescribing a procedure. There were and are in force several statutes providing for the making and collection of assessments to defray the expenses of similar public work in advance of the construction thereof, namely, the act of 1889, the act of 1893 and the act of 1903, each providing a mode for the opening of public streets through private lands (Stats. 1889, p. 70; Stats. 1893, p. 220; Stats. 1903, p. 376); the act of 1901, and the act of 1909, each for the improvement of public streets (Stats. 1901, p. 34; Stats. 1909, p. 1042); and the acts of 1891 and 1893 for changing the grades of streets and for doing the necessary work for that purpose. (Stats. 1891, p. 116; Stats. 1893, p. 91.) The act of 1901 provides that the assessment for the costs and expenses must be collected before the contract is let for the work to be done. Therefore, when the board of supervisors, by the same section, is empowered to enact a procedure as a substitute for these various modes, the implied meaning of the latter grant is that such ordinance may also provide for the collection of the assessment before the doing of the work, or the letting of a contract therefor."

If the fact that the act of 1901 provides for payment in advance is germane, as there decided, to the question of whether or not the supervisors had power to make similar provisions by its procedural ordinance for the payment in advance, it would seem to follow not only that the supervisors were authorized to provide for the payment of assessments in annual installments, as is also expressly authorized

by section 33, but also that the phrase "annual installments" in the concluding sentence of section 33 was intended to apply to the various statutory plans already in force in other parts of the state for the payment in annual installments as well as the particular method provided in the procedural ordinance. And, in determining whether or not the terms of the procedural ordinance adopted by the board of supervisors contained a provision for the payment in annual installments of the assessments therein provided for, it is proper to consider the corresponding provision therefor in the general statutes which the supervisors were authorized to adopt in lieu of the charter plan of street improvement and also in lieu of the adoption of a procedural ordinance.

[4] The requirement that the property holder shall sign a bond, waiving irregularities in the proceedings, is not unreasonable or unjust. Under the state laws for the issuance of street improvement bonds supplementing the Vrooman Act it is usually provided that the issuance of the bond shall be conclusive evidence of the regularity of all proceedings, and the effect of such legislation is to deprive the property holder of all defenses to the assessment other than those that are jurisdictional (*Chase* v. *Trout,* 146 Cal. 350, [80 Pac. 81]). The requirement that the property holder shall sign a bond can have no other effect. If there is no jurisdiction in the authorities of the city and county to make the assessment, the bond given to secure the privilege of paying such void assessment in annual installments would be without consideration and void. (*City Street Improvement Co.* v. *Pearson, supra.*) To require the property holder to waive informalities and defects which are not jurisdictional is not unreasonable or unjust. Where the lot is assessed for more than fifty per cent of its assessed value for taxation purposes the provision of the bond, although containing an express promise to pay the assessment, would not create a personal liability, for such promise would be without consideration. Whether it would create such a personal obligation where the assessment was less than this amount, and the extension is a privilege secured by such a promise is a matter that need not be determined on this appeal.

[5] We will next consider the question of the provision for the semi-annual payment of interest. From one point of

view the payment of seven per cent interest semi-annually increases the rate of interest. (*Skinner* v. *Santa Rosa,* 107 Cal. 464, 470, [29 L. R. A. 512, 40 Pac. 742]; *Derby* v. *Modesto,* 104 Cal. 515, 523, [38 Pac. 900].) The question, then, is whether by this requirement the board of supervisors have violated that provision of the charter which says that "... the rate of interest to be paid on such payments not to exceed seven per cent per annum." (Sec. 33, *supra.*) It is to be observed that the charter does not fix the time of the payment of interest nor specifically provide that it shall be paid annually. The supervisors are authorized by the charter, section 33, *supra,* to provide for the payment "in annual installments covering a term not to exceed ten years upon conditions as to said board may seem reasonable and just." The only limitation upon this power is that with reference to the rate of interest. The terms and conditions under which payments upon the installment plan are to be permitted are left entirely to the board of supervisors, to be prescribed by ordinance. They have full legislative power over the matter and a wide discretion to be exercised in the procedural ordinance. If the term "seven per cent per annum" has a meaning so definite and fixed that it always means seven per cent payable at the end of the year, then the restriction upon the board of supervisors would prevent them from requiring that interest be paid semi-annually. The term "seven per cent per annum," however, is to be construed in accordance with the common acceptation of that term. The matter of the time of the payment of interest, whether in advance, monthly, quarterly, or semi-annually, is ordinarily understood to affect the term and manner of payment rather than the rate of the interest. The terms commonly used are "seven per cent payable monthly" or "quarterly" or "semi-annually." It is more common to provide for the payment of interest upon notes and mortgages quarterly or semi-annually than to provide for such payment annually, and yet the interest rate is always referred to by the rate fixed per annum. The fact that such rate is payable monthly, quarterly, or semi-annually does not make the rate usurious where the rate per annum is the highest rate permitted by law. (*Mowry* v. *Bishop,* 5 Paige (N. Y.), 98; *Varn* v. *White,* 68 Fla. 329, [67 South. 142]; *Crowell* v. *Jones,* 167 N. C. 386, [83 S. E.

551]; *Goodale* v. *Wallace,* 19 S. D. 405–417, [117 Am. St. Rep. 962, 9 Ann. Cas. 545, 103 N. W. 651].) In *Meyer* v. *City of Muscatine,* 68 U. S. 384, [17 L. Ed. 564, see, also, Rose's U. S. Notes], the supreme court of the United States had under consideration the validity of that city's municipal bonds. The ordinance calling the election provided for a vote of the people upon the proposition, ''to borrow for a term of years, not exceeding twenty, on bonds of the city, *at a rate of interest not higher than ten per cent* per annum, one hundred and thirty thousand dollars,'' etc. The bonds issued in pursuance of the election provided for interest at the annual rate of ten per cent, *payable semi-annually* on the first day of January and the first day of July in each year, ''and the faith of the city of Muscatine is hereby pledged for the semi-annual payments of interest,'' etc. The court stated the ground of the defendant's opposition to the validity of the bonds issued in pursuance of the election as follows, to wit: ''Because in the stipulation to pay the interest semi-annually at the rate of ten per cent, the authority conferred by the vote which limited the rate of interest to 'not higher than ten per cent per annum' was transcended and a usurious rate agreed to be paid.'' In disposing of the point the court said: ''This objection has no foundation. When a statute fixes the rate of interest per annum, it has always been held that parties may lawfully contract for the payment of that rate, before the principal debt becomes due, at periods shorter than a year.'' (68 U. S. (1 Wall.) 391, [17 L. Ed. 564], *supra.*) The theory upon which interest payable semi-annually is considered a greater rate than the same interest payable annually is that it is in effect a compounding of interest—the interest being paid, the payee can reloan the money and thus secure interest upon the interest. There is, however, this important distinction: If the interest is not paid and no action is taken to enforce the payment, the assessment merely bears seven per cent per annum simple interest, so that in effect the requirement of payment of interest semi-annually is a term or condition of payment rather than an increased rate. The legal effect of this provision in the bond is that for nonpayment of interest semi-annually the due date of the entire principal of the bond may be accelerated. The board of supervisors are vested with full legis-

lative discretion to determine the terms and conditions under which the annual installments of the assessment may be paid, and the effect of the provision made is that if one-third of the assessment is paid at the time of the issuance of the bond the other installments are to be deferred for one and two years, respectively, provided that in six months accrued interest was paid on the deferred installments, that in one year the second installment was paid with accrued interest, in six months more accrued interest was paid, and in the second year the entire balance. In *Skinner* v. *Santa Rosa, supra,* the court was addressing itself to a situation where the election notice under which the bonds were issued provided that "each bond shall have attached thereto a separate coupon for the interest for every year that such bond has to run, and each of said coupons shall be made therein payable and shall be payable at the office of the city treasurer . . . on the first Monday of December of the year for the interest whereof it is given." In that case the election notice not only fixed annual rate and the time of payment of interest, but declared that it should be paid by coupons showing the annual interest. The notice of election also fixed the amount of taxes to be levied each year for forty years to pay the amount of such bond. The supervisors after the election passed an ordinance changing the form of bonds, making them payable with interest at four per cent per annum, payable semi-annually, and made the bonds and interest "payable in gold coin of the United States of America of the present standard of weight and fineness," while the ordinance calling the election provided for bonds "payable in gold coin or lawful money of the United States." The statute required that the election notice should contain "the number and character of the bonds to be issued, *the rate of interest to be paid* and the amount of tax levy to be made for the payment thereof." (Italics ours.) Under such circumstances it is said by the court "that the payment of interest semiannually increases the rate is obvious." The point really decided in that case is that the issuance of bonds providing for the payment of interest semi-annually and requiring the payment to be made in gold coin instead of gold coin or lawful money is a substantial departure from the character of bonds authorized by the people at the election, and

that the city had no power to issue bonds "in a form which does not substantially comply with the terms stated in the ordinance of submission and notice of election and with the statute under which the proceedings were had." In *Derby* v. *Modesto, supra,* it was held that the power to require the payment of interest semi-annually was included in the power to fix the rate of interest. It does not follow, however, that the requirement that interest be paid semi-annually is necessarily the exercise of the power to fix the rate of interest rather than the power to fix the terms of payment. This view finds support in *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624, [39 L. R. A. 444, 51 Pac. 1085], concerning a municipal bond election held under the same statute (Stats. 1889, p. 399, as amended; Stats. 1891, p. 94; Stats, 1893, p. 61), as was the bond election involved in *Skinner* v. *Santa Rosa, supra.* It was there said that it was unnecessary to state in the election notice whether the interest was payable annually or semi-annually, and that the statement in the election notice that "the rate of interest to be paid on said bonds will be five per cent per annum" is a sufficient compliance with the statutory requirement that the election notice state "the rate of interest to be paid," and declares that the statute " . . . *makes no requirement with reference to the publication of the times at which the interest is payable.*" If the requirement that the interest be paid semi-annually or quarterly increases the *rate of interest* over an annual rate, as declared in *Skinner* v. *Santa Rosa, supra,* the election notice could not state the "rate of interest" without stating the time of its payment, whether annually, semi-annually, or quarterly. It was for this reason, no doubt, that the chief justice pointed out in his concurring opinion that this case overruled *Skinner* v. *Santa Rosa, supra* (119 Cal. 634, [39 L. R. A. 444, 51 Pac. 1089]), as is also claimed in *Carlson* v. *City of Helena,* 39 Mont. 82, 111, [17 Ann. Cas. 1233, 102 Pac. 39]. But the statement in *Murphy* v. *City of San Luis Obispo, supra,* is *dictum* in view of the holding that "the ordinance herein stated in sufficient terms that the interest was to be paid annually." The authority of the board of supervisors of the city and county of San Francisco, however, is not as limited under the charter which grants them power to fix reasonable and just conditions of payment as

were the city authorities of Santa Rosa and San Luis Obispo under the statute under consideration in *Skinner* v. *Santa Rosa, supra,* and *Murphy* v. *San Luis Obispo, supra.* As has been pointed out, the provision requiring interest to be paid semi-annually fixes the terms of payment of principal and interest rather than the rate of interest. There was ample power on the part of the board of supervisors to fix the terms and conditions of payment in a general ordinance covering the whole subject, and while it is true that we are dealing with proceedings *in invitum* and that the law is to be strictly construed in favor of the property holder, we are also dealing with a clearly delegated legislative power, broad in its terms and limited only in the two particulars with reference to the amount of the several installments and the rate of interest.

If we look to state legislation for aid in determining what conditions for payment in annual installments were considered reasonable and just by the state legislature, we find that twenty years before the adoption of the charter amendment (sec. 33, *supra* [1913]) a law was enacted for the issuance of bonds to represent the amount of assessments on property benefited by street improvements (Stats. 1893, p. 33). These bonds were payable in equal annual installments, interest was payable semi-annually, and for any default in payment of principal or interest the whole bond became immediately due and payable, and the property was to be sold to pay the amount. The people of San Francisco in adopting the charter amendment must be deemed to have had in mind this and similar legislative plans for the payment of street assessments in annual installments, particularly as the charter amendment expressly authorized the board of supervisors to adopt such general state laws. As already pointed out, the provisions for the signing of a bond by the property owner for the semi-annual payment of interest, and for the acceleration of the due date of the bond as provided in such statutes, if adopted by an ordinance of the supervisors so enacting, would no doubt be held to provide such a scheme for annual installments as would have removed the inhibition of section 8, *supra,* under the express terms of the last sentence of section 33 above quoted, and, hence, it follows that a similar provision in a procedural ordinance enacted by the board of

supervisors would have the same effect (*Hayne* v. *City and County of San Francisco, supra*). We think on the whole, in view of similar legislation by the state, that the ordinance provides for payments in annual installments within the meaning of the concluding sentence of section 33 of the charter, *supra*, and for that reason that section 8 of the charter, *supra*, does not apply, and, hence, that the assessments herein sued upon, although more than fifty per cent of the assessed value of the lots, are not void for that reason.

[6] Appellants contend, however, that a suit for the entire amount of the assessment before the expiration of three years is not authorized by the ordinance and that, therefore, this proceeding is premature. This is only another way of saying that the provision made for the payment of the assessment in annual installments is not in compliance with the charter, and is answered by the above considerations. It is true, however, that there is no express provision in the statute for a suit for the full amount of the assessment where the property holder fails to give a bond. It is expressly provided in section 35 of the Street Improvement Ordinance that in the event of a void or faulty bond, or where the bond is not given by the owner, the contractor may sue to recover the assessment. While no express provision is made for the collection of the entire assessment in case the owner fails to give a bond, it is expressly declared that the assessment creates a lien upon the property for the full amount thereof, and in the absence of some provision postponing the time of payment a suit could be instituted at any time after demand as provided in section 35. This we think is clearly implied in the ordinance and authorized by the charter. This conclusion was reached by the district court of appeal (first district) in *Hutton* v. *Newhouse*, 41 Cal. App. 689, [183 Pac. 276], and a rehearing was denied by this court.

[7] In addition to these points going to the merits of the case, appellants contend that the complaint is faulty, for the reason that it does not expressly set out *in haec verba* the street improvement ordinance of the city and county of San Francisco. It merely alleges that proceedings were had under and in pursuance of provisions of a certain ordinance of the city and county of San Francisco, giving number, title, and date of passage. Under section

459 of the Code of Civil Procedure it is sufficient to plead an ordinance by title and date of passage. It is true that the allegation is not a direct one that the ordinance was passed on a certain date. But this mere formal defect cannot justify a reversal of the case where the terms of the ordinance appear in the record before us. (Const., art. VI, sec. 4½.) The point is made that section 459 of the Code of Civil Procedure differs from corresponding provisions of the Practice Act of 1850 (Stats. 1850-53, sec. 61, p. 528), in that section 459 omits to provide that the courts shall take judicial notice of the ordinance so pleaded. This change is of no significance in the case at bar, for the reason that upon the trial the ordinance was proved by a certified copy thereof.

The judgment is affirmed.

Olney, J., Shaw, J., Sloane, J., Angellotti, C. J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Wilbur, J., who was absent.