[Civ. No. 17389. Second Dist., Div. One. May 8, 1950.]

SAMUEL F. BAKER et al., Plaintiffs and Appellants, v. PHILIP PHILBIN et al., Defendants and Appellants.

Victor Ford Collins, Hyman Smith and Frank J. Kanne, Jr., for Plaintiffs and Appellants.

Loeb & Loeb and H. F. Birnbaum for Defendants and Appellants.

DRAPEAU, J.—Edward Schulz made an offer to buy Camp Anza from the War Assets Administration, and deposited $2,500 to bind the bid. The purchase price was $510,000. He had to have $99,500 to make his down payment. He was a man of limited finances, and quite likely was greatly surprised when the government notified him that his bid was to be accepted. Most certainly he was exceedingly disturbed. For, unless he could raise the down payment he stood to lose $2,500. So he immediately commenced a search for capital.

In his search he met plaintiffs, who told him they would raise the money for a 5 per cent commission, and if he would employ them as engineers on the disposal of the property. None of the plaintiffs was licensed as a business opportunity broker, or registered as a civil engineer.

Mr. Schulz agreed to the proposal, and one of the partners typed up a memorandum of agreement, the construction of which will determine the basic issues in this case. The writing provided for payment of $250 by Mr. Schulz, by way of a retainer. Mr. Schulz didn't have $250, and so the partners sent him out to get it. He dug it up in a day or two, whereupon the document was signed and delivered, and is as follows:

"This an agreement between Mr. Edward F. Schulz of Fontana, California and the firm of Weikel and Mahony of Los Angeles, whereby the two parties to this agreement agree to the following, to wit,

"1) Weikel and Mahony agree to use their best efforts to raise sufficient monies for Mr. Schulz so he can complete the purchase of the property known as Camp Anza, California from the War Assets Administration, upon which he has already made a down payment, and

"2) for this and other services to be rendered in conjunction therewith, Mr. Schulz on his part agrees to pay the firm of Weikel and Mahony the sum of $250.00 upon the signing of this agreement, as a retainer fee, upon a best performance basis, without any further guarantees or warranties, and further if

"3) the firm of Weikel and Mahony are successful in raising any monies to complete the purchase as stated above, Mr. Schulz agrees to pay Weikel and Mahony an additional fee of $25,000.00, or on a basis of five per centum, for any part of the monies so raised, it being understood that the fee of $25,000.00 is only payable if the property is turned over to Mr. Schulz so he can proceed with his intended operations, and if only a part is raised, then the five per cent rule only, shall apply, and further if the project is completed *withby* Mr. Schulz can legally proceed with said operation, then the

"4) firm of Weikel and Mahony shall be appointed top consulting engineers for the whole project with a further fee to be mutually and reasonably agreed upon by the parties hereto, and

"5) the firm of Weikel and Mahony hereby agree at all times to protect to the best of their ability, the best interests

396

of Mr. Schulz without any liability except wilful fraud, and is exclusive with this firm . . . . . . . . . . . . . Accepted this date September 5 1947 in the City of Los Angeles,

By X Edw. F. Schulz            By Saml. F. Baker
        Edward F. Schulz        Weikel and Mahony
                                        (Senior Partner).
Witnessed By M. H. B. Weikel in two copies only.''

Plaintiffs contacted a number of sources of investment capital. Conferences were held, a layout of a plan of development and disposal of the property was made, with residential, business and manufacturing sections. Then they learned that Mr. Schulz was about to sell his right, title and interest in Camp Anza to defendant Philip Philbin. Mr. Schulz, however, did not say anything to them about that until they called him up and asked if it was true.

However, Mr. Schulz did tell Mr. Philbin of his contract with plaintiffs and that he thought they might make trouble for him. Mr. Philbin called them on the telephone, and a conference followed between two of the plaintiffs and Mr. Philbin and a friend of his.

Mr. Philbin said: ''I don't want to buy into a lawsuit.'' Mr. Baker (one of the plaintiffs) replied: ''Well, Phil, it looks like you might.'' Mr. Philbin said: ''If you will step out of the picture, I will pay you $12,000.'' Plaintiffs agreed to this proposal, and they all shook hands on the bargain. In passing, it should be said that the evidence is in sharp conflict as to this. Mr. Philbin and his friend testified directly to the contrary of the conversation quoted.

Plaintiffs stepped out of the picture. Mr. Philbin went on with his purchase from Mr. Schulz, and from the government. But Mr. Philbin would not pay the $12,000. Plaintiffs sued him for that amount, and also, in a second cause of action for damages for causing Mr. Schulz to breach the contract. Plaintiffs also sued Mr. Schulz for breach of the contract.

The court sustained a general demurrer to plaintiffs' second cause of action, that Mr. Philbin caused Mr. Schulz to breach the contract. And the judgment was that plaintiffs take nothing because of the alleged tort.

The remaining issues were consolidated and tried together. The court found for plaintiffs against Mr. Philbin, on the $12,000 claim. This was on the theory that the cause of action rested upon a compromise agreement for settlement of a

controversy, and also a promise not to interfere with Mr. Philbin's purchase from Mr. Schulz. Also the court found and adjudged against the plaintiffs on their complaint against Mr. Schulz.

Mr. Philbin and plaintiffs appeal from the judgment. No appeal has been taken by Mr. Schulz.

Mr. Philbin contends: (1) that the contract on its face is so uncertain, ambiguous and unilateral as to be unenforceable, and that plaintiffs' mere belief that they had a valid claim against Mr. Philbin was not sufficient consideration to support his alleged promise to pay them $12,000; (2) that, *ex dolo malo non oritur actio,* as a matter of law, plaintiffs could not enforce any claim based upon the contract, because they were not registered as business opportunity brokers, or licensed as civil engineers: (Bus. & Prof. Code, §§ 10,250 et seq.), and (3) that the contract had been revoked by Mr. Schulz before the compromise agreement was made.

Both parties to the appeal have cited *City Street Improvement Co.* v. *Pearson,* 181 Cal. 640 [185 P. 962, 20 A.L.R. 1317], and each relies upon one of the two principles set forth and discussed in that case. That case deals with a compromise of an asserted claim against an abutting street landowner for street improvements. The court held that an invalid claim, wholly without foundation and absolutely void, constituted no consideration for a compromise of a demand based upon it. In that case the court also discussed the other phase of the rule: A promise given in consideration of the settlement or compromise of a dispute or controversy the event of which is uncertain or doubtful, is founded upon a sufficient consideration.

In the case at bar it cannot be said that the contract was wholly meaningless and unenforceable. If the plaintiffs had secured the necessary $99,500 for Mr. Schulz within a reasonable time, undoubtedly they would have been entitled to the 5 per cent compensation provided by the contract. Therefore, the contract, and the conduct of the parties presented a situation whereby plaintiffs had a claim, and there was consideration for the promise of Mr. Philbin. (*Hart* v. *Kanaye Nagasawa,* 218 Cal. 685 [24 P.2d 815].)

The trial court found that the claim was asserted in good faith. This was a finding of good consideration for the compromise, even though the claimant might not have prevailed in a lawsuit based on the contract. (*Union Collection Co.* v. *Buck-*

*man,* 150 Cal. 159 [88 P. 708, 119 Am.St.Rep. 164, 11 Ann.Cas. 609, 9 L.R.A.N.S. 568].)

■ On the question of illegality of the contract, there is an express finding that the plaintiffs were not acting as civil engineers or business opportunity brokers. The terms of the contract and the conduct of the parties supports the finding.

On the question of revocation, the contract is not one solely of agency. Revocation of it by Mr. Schulz did not necessarily terminate all rights of plaintiffs under it.

Consideration of the cross-appeal by plaintiffs is next in order.

■ Plaintiffs contend that the order sustaining the demurrer, and the judgment, are erroneous as to them because Mr. Philbin induced Mr. Schulz to violate his contract with them; that this was a tort for which they had the right to sue and recover.

In their briefs plaintiffs say that the theory of their second cause of action is based upon the law as declared in *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33 [112 P.2d 631]. Mr. Philbin reiterates his contentions: That there was no binding contract; that in any event it was illegal; and that it had been revoked.

But the court found that the parties had compromised their differences, and rendered judgment accordingly. The judgment of necessity included all claims which plaintiffs may have had against Mr. Philbin. As was said in *Silver* v. *Shemanski,* 89 Cal.App.2d 520, at page 532 [201 P.2d 418] : ''It is established law in this state that a valid compromise agreement has many of the attributes of a judgment, and in the absence of a showing of fraud or undue influence, is decisive of the rights of the parties thereto.''

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 31, 1950, and defendants and appellants' petition for a hearing by the Supreme Court was denied July 6, 1950. Schauer, J., voted for a hearing.