[S. F. No. 8850. In Bank.—June 11, 1920.]

## THE PEOPLE, etc., Appellants, v. LAKE COUNTY WATER DISTRICT et al., Respondents.

[1] WATER DISTRICT — LAND NOT DESCRIBED IN PETITION — IN-CLUSION WITHIN DISTRICT WITHOUT CONSENT OF OWNER UNAU-THORIZED—CONSTRUCTION OF ACT.—The act of the legislature pro-viding for the incorporation, organization, and power of county water districts (Stats. 1913, p. 1049) reasonably construed, precludes the inclusion by the supervisors in such a district of land not in-cluded within the boundaries of the district as set forth in the peti-tion initiating the proceeding, and of the proposed presentation of which published notice is required, except when such inclusion is had upon the application of the owner thereof.

[2] ID.—LANDS TO BE INCLUDED IN DISTRICT—CONSTRUCTION OF ACT.— The provisions of section 3 of the act of 1913 providing for the organization of county water districts, taken altogether, mean simply that solely with regard to the territory described in the petition the board of supervisors shall make such changes in the proposed boundaries as may be deemed advisable, provided that they may not exclude from the district as proposed by the petition any territory which, in their judgment, will be benefited by the formation of the district, or to allow to remain therein any lands which, in their judgment, will not be so benefited, except that on the application or with the consent of the owner of land out-side the proposed district, which will be benefited by the district, they may, in their discretion, add such land to the proposed dis-trict.

APPEAL from a judgment of the Superior Court of Lake County. Emmet Seawell, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Alan C. Van Fleet for Appellants.

H. E. Witherspoon for Respondents.

ANGELLOTTI, C. J.—This is a proceeding in *quo warranto* against the Lake County Water District and its directors to have it adjudged that all proceedings had relative to the formation of such district are void, and that the district be dissolved and restrained from acting as a corporation and exercising the franchise of a corporation, and for such other relief as may be meet and proper. Judgment was given decreeing the district to be a legally created, acting, and existing county water district of the state of California, duly organized and incorporated under the act relative to such districts, approved June 10, 1913, and, in effect, denying the relators all relief. We have here an appeal by plaintiffs from such judgment.

Two principal claims are made by appellants, one being that there was such a material and substantial departure by the board of supervisors from the provisions of the act in the matter of inclusion in the proposed district of lands not within the boundaries of the district as set forth in the original petition as to render the whole proceeding void; and the other being that if the act purported to authorize the course followed in this matter it is in violation of rights guaranteed relators by both federal and state constitutions.

The act (Stats. 1913, p. 1049) is one providing for the incorporation, organization, and powers of county water districts. It provides explicitly how such a district may be brought into existence. By its terms "the people of any county, . . . or portion of a county, . . . , having a population of not less than one thousand inhabitants, may organize a county water district under the provisions of this act by proceeding as herein provided." (Sec. 2.) The proceeding for the creation of such a district must be inaugurated by the presentation to the board of supervisors of the county at a regular meeting of a petition signed by "registered voters within the boundaries of the proposed water district, equal in number to at least ten per centum of the number of votes cast in said proposed county water district for the office of Governor" at the last general election. The

petition must "set forth and describe the proposed bound-
aries of such water district, and shall pray that the same be
incorporated" under the provisions of the act.   The text
of the petition must be published in a newspaper or news-
papers printed and published in the county, together with
a notice stating the time of the meeting of the board of
supervisors at which the same will be presented and con-
sidered, for at least two weeks before the time at which the
same is to be presented, the publication showing the names
of at least five of the signers and the number of signatures
attached.   The published notice must also state that at the
time stated "all persons interested therein may then appear
and be heard."   At such time the board of supervisors shall
hear the petition and those appearing thereon and may
adjourn such hearing from time to time not exceeding four
weeks in all.   Then follow the provisions here directly in-
volved, which are as follows:

"On the final hearing said board shall make such changes
in the proposed boundaries as may be deemed advisable
and shall define and establish such boundaries.   But said
board shall not modify said boundaries so as to exclude
from such proposed district any territory which would be
benefited by the formation of such district, nor shall any
lands which will not, in the judgment of said board, be
benefited by such district, by means of any of said systems
of works, be included within such proposed district.   Any
person whose lands are benefited by such district may upon
his application, in the discretion of said board, have such
lands included within said proposed district."

Upon the final determination of the boundaries of the
district the board must give notice of an election to be held
in the proposed water district for the purpose of de-
termining whether the same shall be incorporated.   If a
majority of the votes in each municipal corporation or part
thereof included in the district, and also in the unincorpo-
rated territory included therein, be in favor of such in-
corporation, the board shall make an order declaring the
territory duly organized as a county water district.   On
this a certificate of incorporation is issued by the Secretary
of State, and thenceforth the district is deemed incorpo-
rated.   The board's finding in favor of the genuineness
and sufficiency of the petition and notice is final and con-

clusive against all persons except the state upon suit commenced by the attorney-general within one year after the order of the board declaring the district organized. (This suit was so commenced.) The district is governed by its own board of directors selected in the mode provided in the act. It is clothed with all the powers appropriate to the acquirement and operation as a business of a water system which is primarily for the benefit of the inhabitants and property in the district, and water of which, when there is a surplus, may be sold outside the district. In aid of its purposes it may issue bonds, the principal and interest thereof to be paid by the district. The express intention of the act is to require all operating expenses, as well as expense of repairs and depreciation of works and interest on bonded debt and, "so far as possible," principal of bonded debt as it falls due, to be paid from the revenues of the district, the directors being commanded to fix such rates for water as will enable this to be done, but it is expressly provided that if, from any cause, the revenues are inadequate to pay such interest or principal, the directors shall furnish to the board of supervisors and county auditor an estimate of the minimum amount of money required, and the board must levy a tax on all property in the territory comprising the district, to raise the amount. This tax constitutes a lien on all the property in such territory, having the same force and effect as other liens for taxes.

The original petition presented in this matter, referred to as the Maher petition, was for the organization and incorporation as a county water district of certain territory described therein, constituting the central part of Lake County, surrounding Clear Lake, the waters of which, its tributaries, and other sources of water within the contemplated district it was proposed to use. It was signed by the requisite proportion of voters of the proposed district, and notice of the proposed presentation of the petitions and the time thereof was duly published, as required by the act. The matter came on for hearing as noticed. While the matter was pending before the board of supervisors two other petitions with an aggregate of seventy-three "registered voters in a part of Lake County that was not included in the proposed water district" were presented,

one known as the Akin petition and the other as the Herrick petition. These petitions asked that there be included in the proposed water district all that part of the county south of the district as originally proposed, the additional territory comprising, it is said, fifty thousand acres, and increasing the area of the proposed district approximately one-third. All of this additional territory is separated from the lands described in the Maher petition ''by high mountains.'' Of this additional territory the relators own 4,412.81 acres. No notice was ever published of the proposal to present or the presentation of either the Akin or Herrick petitions. Neither of the relators signed any of the petitions, or received notice ''of any kind or character whatsoever of the proceedings or any part thereof,'' or ''had an opportunity to be heard before the board of supervisors of said county as to whether or not the'' additional territory ''should be included within'' the district, or ''to be heard at all on the matter of the formation of the'' district. The board included the additional territory in the district, and at the special election held thereafter within the district as finally fixed by the board a majority of the votes cast were in favor of the incorporation of the district. It may be noted that the report of the vote by precincts contained in the record indicates that the vote in the additional territory was heavily against the proposition. The board then made its order declaring the district, as enlarged by the additional territory, duly organized, and on January 15, 1916, the certificate of the Secretary of State was issued. This action was commenced within three months thereafter.

It may be conceded solely for the purposes of this decision that, assuming that the act authorized the inclusion in the proposed district by the board of supervisors of lands not included within the boundaries defined by any noticed petition, without the consent of the owners of such land, and without any notice to them or opportunity to them to be heard before the board upon the question of the propriety of including their land in the proposed district, there would be nothing therein opposed to any constitutional guaranty, and this upon the theory that the steps provided for the organization of such a district are simply for the creation of a public corporation to be in-

vested with certain public duties which it is to exercise in behalf of the state and which do not directly affect private property. (See *Henshaw* v. *Foster,* 176 Cal. 507, 513, 515, [169 Pac. 82].) So conceding, it would, however, seem most reasonable, in view of the provisions of the act, that every property owner whose property is proposed to be included should have some sort of notice and opportunity to be heard on that question. What we have said as to the act shows that all the property in such a district is practically pledged to the proper operation of the district, and the discharge of all its obligations, financial and otherwise. The hearing before the board of supervisors prior to the final fixing of the boundaries provided by the act is the only opportunity afforded a property owner to show that his property, as to which it is proposed to create this obligation, would be in no way benefited by such district. That he should have such an opportunity was doubtless one of the main objects for the notice of hearing provided by the act. [1] Although the precise question appears never to have been decided by this court in any other way than as *dictum,* we are of the opinion that the act reasonably construed precludes the inclusion by the supervisors in such a district of land not included within the boundaries of the district as set forth in the petition initiating the proceeding, and of the proposed presentation of which published notice is required, except when such inclusion is had upon the application of the owner thereof. The petition is one by *voters of the territory described therein* asking that *such territory* be incorporated as such a district. The proceeding is one directed exclusively to that particular territory, to determine whether it shall be constituted such a water district. No suggestion of the possible inclusion of land not part of this territory is provided for either in petition or the notice. It apparently concerns, in so far as the enforced inclusion of their land is concerned, only those within the proposed district as the same is described in the petition and notice. It is in the light of this fact, together with the provisions as to notice, as well as in the light of what immediately follows, that we must read the provision that ''On the final hearing said board shall make such changes in the proposed boundaries as may be deemed advisable and shall define and establish such boundaries.''

This is immediately followed by the provision that in any such change the boundaries shall not be modified so as to *exclude from the proposed district* any ´territory which would be benefited by the formation of the district. Then follows the provision that no land which will not, in the judgment of the board, be benefited by such district by means of any of said system of works, be included in such district. Then follows the independent separate provision that "any person whose lands are benefited by such district may upon his application, *in the discretion of said board,* have such lands included within said proposed district." There is no express provision for the *addition* to the proposed district of land not included within the boundaries given by the petition other than the one just quoted, which makes the application of the owner a prerequisite to such action by the board. It is to be noted, too, that this provision is entirely superfluous if the board by virtue of the previous provisions already has the power to add such land to the district without the application or consent of the owner. **[2]** We are of the opinion that taken altogether these provisions of section 3 of the act mean simply that solely with *regard to the territory described in the petition* the board of supervisors "shall make such changes in the proposed boundaries as may be deemed advisable," provided that they may not exclude from the district *as proposed by the petition* any territory which, in their judgment, will be benefited by the formation of the district, or allow to remain therein any lands which, in their judgment, will not be`so benefited, except that on the application or with the consent of the owner of land outside the proposed district, which will be benefited by the district, they may, in their discretion, add such land to the proposed district. The meaning might perhaps have been more clearly expressed, but this, we think, was the evident intent. Although in no way necessary to the discussion, this court in *Central Irrigation District* v. *De Lappe,* 79 Cal. 351, 360, [21 Pac. 825, 828], in considering a provision of the so-called Wright irrigation district law (Stats. 1887, p. 29) in all material respects the same as the one here involved, said: "It is to be observed that no power is given to the board to *include* lands which are not included by the petition, except upon request of the owner." It was held in that case that there was nothing in the law requiring such

request to be in writing. A similar provision contained in the Irrigation District Act of March 31, 1897 (Stats. 1897, p. 254), as amended March 26, 1911 (Stats. 1911, p. 510), was referred to in *Imperial Water Co.* v. *Supervisors* (*certiorari*), 162 Cal. 14, 25, 26, [120 Pac. 780], where it was claimed the order of the board of supervisors was void because it included certain tracts of land not within the boundaries described in the petition. The order was silent upon the question whether the owners of such land applied to have them made part of the district. It was said that the plaintiff was in no way interested in such land, and that "they comprise a very small proportion of the district as finally established." It was said that "whatever the rights of the owners thereof (the land therein) may be, the consideration thereof is immaterial to the present case," in that the plaintiff in that proceeding had "no right to invoke aid from them and no right to represent them here," and that "the lands comprise so insignificant a portion of the district that the exclusion thereof from the legal boundaries would not be sufficient to nullify the order providing for the organization of the district." This action is one contemplated by the act, an action seasonably commenced by the people of the state on the relation of owners whose land has been improperly included in the district. The territory added by the board, as we have seen, comprised some fifty thousand acres, separated from the proposed district "by high mountains," and increasing the area of the district approximately one-third. It is not made to appear that a single *owner* of any of this fifty thousand acres of land asked that his land be included in the district, the only request in the matter being that of certain "registered voters" of portions of Lake County not included in the proposed water district. Certainly it cannot fairly be said that the departure from the law in the matter of the organization of this district, as we read it, was not a very substantial one. It seems to us to be such that it may not fairly be held that the district was organized in accord with the provisions of the act, substantial compliance with which is essential.

The judgment is reversed.

Shaw, J., Wilbur, J., Olney, J., Lawlor, J., and Lennon, J., concurred.