[S. F. No. 9762. In Bank.—May 12, 1923.]

## JAMES J. FLYNN et al., Respondents, v. GIOVANNI CHIAPPARI et al., Appellants.

[1] STREET LAW—METHOD OF ASSESSMENT—MUNICIPAL AUTHORITIES —DISCRETION—REVIEW.—The matter of selecting the method of assessment for street improvements has been committed to the municipal authorities, and the exercise of their discretion thereunder should not and will not be reviewed by the courts, in the absence of fraud or mistake.

[2] ID. — MAIN STREET — SAN FRANCISCO STREET IMPROVEMENT ORDINANCE.—Railroad Avenue, in the city and county of San Francisco, must be held to be a main street, as defined in the San Francisco street improvement ordinance, notwithstanding the circumstance that the blocks which it assists in bounding are irregular in shape.

[3] ID.—STREET IMPROVEMENT — NOTICE. — Notice to property owners sought to be charged for street improvements is not required where the legislature itself determines the amount of the benefits and the property to be benefited, either by describing the property to be charged or by establishing a rule or criterion which will automatically determine the property to be charged when applied to the physical facts, such as the "front-foot rule." The reason for this is that the property owners are conclusively presumed to have been heard through their representatives in the legislature.

[4] ID. — BOARD OF SUPERVISORS — LEGISLATIVE CHARACTER.—In proceedings for street improvements under a municipal ordinance the board of supervisors is the legislature within the above rule.

[5] ID. — DETERMINATION OF PROPERTY TO BE CHARGED — BENEFITS — DISCRETION—NOTICE.—Where the determination of the property to be charged and the benefits to accrue thereto in street improvements is committed to an administrative board, due process requires that the property owners affected thereby shall be given adequate notice and an opportunity to be heard upon both these questions.

[6] ID.—SPECIAL METHOD—SECTION 18 OF SAN FRANCISCO STREET IMPROVEMENT ORDINANCE. — LACK OF NOTICE. — Where in ordering street improvements under a method adopted pursuant to section 18 of the San Francisco street improvement ordinance the board of public works adopted a resolution describing the property to be charged, which was spread upon its own records, and a map showing the location thereof which remained on its own files, but its resolution of intention, which was posted in its office and published, not only failed to describe any property to be charged,

but contained no hint or suggestion that any property would be charged other than that chargeable under the front-foot rule, notices being posted along the line of improvement and in front of the quarter blocks in which the property sought to be charged was situated, but they merely containing a brief description of the proposed improvement and a reference to the resolution of intention for further particulars, the resolution of intention containing a description of the proposed improvement, but no reference to any property to be charged therefor, the notice to the property owner was insufficient, as the owner would naturally conclude that the assessment was to be made by the front-foot method, and knowing that his property did not front upon the improvement, but upon a quarter block cornering thereon, he would rest assured that it was not to be charged.

[7] ID.—NOTICE—DESCRIPTION OF PROPERTY — RULE. — In the absence of any predetermined rule established by legislative authority (such as the front-foot rule), whereby the property to be charged can be ascertained, the notice of improvement must, if not directly at least by adequate reference, describe the property to be charged, in order that the property owners affected may be accorded a real opportunity to be heard. The mere fact that the records and files of the board of public works contain such description and that they are open to inspection by the public in no way cures this omission.

[8] ID.—INSUFFICIENT NOTICE—OPPORTUNITY TO APPEAL.—An opportunity to appeal from a street assessment is of no value to the property owner who, because of insufficient notice, has never had an adequate opportunity for a hearing in the first instance. The curative provisions in the San Francisco street improvement ordinance do not and cannot operate to cure the omission of such notice as was necessary to satisfy the requirements of due process.

[9] ID.—INSUFFICIENCY OF FRONT-FOOT METHOD—ASSESSMENT UNDER SECTION 18 OF SAN FRANCISCO STREET IMPROVEMENT ORDINANCE—FINDING—APPEAL.—In a proceeding to foreclose a street assessment levied by a method adopted under the authority of section 18 of the San Francisco street improvement ordinance, where the trial court found, in effect, that the front-foot method was insufficient to authorize the board of public works to make an assessment and that it, therefore, proceeded under section 18 of said ordinance, the plaintiffs are concluded thereby upon an appeal from a judgment foreclosing the lien.

[10] ID. — PROCEDURE ORDINANCE — BOUNDARIES. — A procedure ordinance, providing for assessments for street improvements with reference to lots "fronting on a street," "fronting on the improvement," and "blocks adjoining and cornering upon crossings,"

etc., has reference to the boundary line between the street and the lot, and not to the boundary line of the lot which is in the center of the street.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed.

The facts are stated in the opinion of the court.

P. A. Bergerot and A. P. Dessouslavy for Appellants.

Fabius T. Finch, Paul F. Fratessa and John B. Gartland for Respondents.

MYERS, J.—The defendants appeal from a judgment in favor of plaintiffs foreclosing certain liens for street work under the street improvement ordinance of San Francisco adopted in 1913. The following rough description of the physical situation, while not strictly accurate, will suffice to illustrate the questions raised herein: Lane Street, running northeast and southwest, is intersected at right angles by Wallace Avenue, running southeast and northwest. These two, in turn, are crossed by Railroad Avenue, running north and south. The last-named street overlaps, in part, the intersection of the two first named, but does not precisely coincide therewith, its center line being perhaps twenty feet east of the center of said intersection. Appellants' property is within the quarter block bounded on its southeasterly side by Lane Street and on its northeasterly side by Wallace Avenue, and fronts upon those two streets. The work for which appellants' property is assessed is in the westerly half of Railroad Avenue. Of this work about one-third is within the intersection of Lane Street and Wallace Avenue, as well as within the lines of Railroad Avenue. One-third is within the intersection of Lane Street and Railroad Avenue, but without the lines of Wallace Avenue, and one-third within the lines of Railroad Avenue, but not within the lines of either of the other two streets.

The San Francisco street improvement ordinance has been under consideration of the courts in the cases of *Bienfield* v. *Van Ness,* 176 Cal. 585 [169 Pac. 225] , *McGinn* v. *Van Ness,* 40 Cal. App. 600 [181 Pac. 70, 183 Pac. 950] , *Federal Const. Co.* v. *Wolfson,* 186 Cal. 267 [199 Pac. 512] , *Federal Const. Co.* v. *Newhouse,* 186 Cal. 284 [199 Pac. 519] , *City St. Imp. Co.* v. *Pearson,* 181 Cal. 640 [20 A. L. R. 1317, 185 Pac. 962], and *Flinn* v. *Shafter Realty Co.,* 190 Cal. 316 [212 Pac. 194], and a *résumé* of its provisions is to be found in the Pearson case, *supra.* It is similar in most of its provisions to the improvement act of 1911 (Stats. 1911,

p. 730). In proceeding under it the board of public works first declares the expediency of the proposed improvement, wherein it directs the preparation of plans and specifications, after which it passes a resolution of its intention to recommend to the supervisors that the improvements be made, in which resolution a day is fixed for the board's action thereon. A copy of said resolution is required to be published in the official newspaper, to be posted in the board's office, and notices of the proposed improvement, which refer to the resolution of intention for further particulars, are required to be posted along the line of the contemplated improvement, and, if the improvement is to be made upon a crossing of the intersection or any part thereof, one at least in front of each quarter block or irregular block liable to be assessed for such improvement, and in the case of the proposed formation of a district, along all the streets within such district. If upon such notice and after a hearing the board so determines, it shall pass a resolution recommending to the supervisors that they order such improvement to be made. When the contemplated improvement in the opinion of the board of public works is of more than local or ordinary public benefit, the expense of the improvement may be made chargeable upon a district and the board shall set out such district in its resolution of intention. Provision is made for an appeal from such resolution, but where there is no appeal, or where the supervisors do not sustain it, the supervisors order the work to be done, whereupon the board of public works invites sealed proposals for the improvement, awards the contract therefor, and upon its completion makes the assessment. Section 17 of the ordinance provides that, except where the expense is to be assessed upon a district, it "shall be assessed upon the lots and lands fronting thereon, except as hereinafter specifically provided; each lot or portion of a lot being separately assessed in proportion to the frontage, at a rate per front foot sufficient to cover the total expense of the work." It provides that "the expense of the work done on main street crossings shall be assessed at a uniform rate per front foot on the quarter blocks and irregular blocks adjoining and cornering upon the crossings." This is followed by various provisions for allotting the expense in specific cases of intersections of subdivision

streets, alleys, terminations, etc., provisions for the allowance of credits where work has already been done by the property owners and provisions for the levying of the assessment "when the resolution of intention declares that the expense of the work and improvement is to be assessed upon à district," and these are followed by section 18, which provides as follows: "If at any time there shall be any street work or improvement done, and none of the methods herein provided are sufficient to authorize the board of public works to make an assessment to pay for the expenses thereof, then said board shall, before it passes a resolution of its intention to recommend the ordering of said work or improvement, establish by resolution a method by means of which such assessment shall be 'made; and on the completion of the work or improvement to the satisfaction of said board, or to the satisfaction of the supervisors on appeal, said board shall make an assessment, to pay the expense thereof according to the method established by said resolution."

It is alleged in the complaint and found by the court that none of the methods provided in said ordinance was or is sufficient to authorize the board of public works to make an assessment to pay for the expense of said work, and that it, therefore, before adoption of its resolution of intention, duly adopted a resolution by which it established a method by which such assessment should be made, and that upon the completion of the work it made an assessment in accordance with the method thus established by it.

It appears from the evidence that Railroad Avenue is an important thoroughfare, serving a considerable district of the city. Appellants contend that the improvement was therefore "of more than local or ordinary public benefit," and that the board should accordingly have proceeded under the district method of assessment. This is not a ground upon which courts are justified in holding an assessment void. [1] The matter of selecting the method of assessment has been committed to the municipal authorities, and the exercise of their discretion therein should not and will not be reviewed by the courts, in the absence of fraud or mistake. (*Hadley* v. *Dague*, 130 Cal. 207 [62 Pac. 500]; *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112 [41 L. Ed.

369, 17 Sup. Ct. Rep. 56]; *French* v. *Barber Asphalt Pav. Co.,* 181 U. S. 324 [45 L. Ed. 879, 21 Sup. Ct. Rep. 625, see, also, Rose's U. S. Notes]; *Larsen* v. *San Francisco,* 182 Cal. 1, 14 [186 Pac. 757].)

Appellants also assert that Railroad Avenue is not a main street, as defined in the ordinance, because of the circumstance that it extends diagonally through rectangular blocks which had already been platted and laid out. The ordinance defines a main street as being a street that bounds a block, and a block as "the blocks known or designated as such, upon the maps and books of the assessor." There is no definition or requirement in the ordinance, nor elsewhere so far as we are advised, requiring that a block shall be rectangular in shape. The complaint alleged and the court found it to be a main street. The only kinds of streets mentioned in the ordinance are main streets, alleys, subdivision streets, avenues, lanes, places, and courts, and main streets are the only ones defined therein. **[2]** We are of the opinion that Railroad Avenue must be held to be a main street, notwithstanding the circumstance that the blocks which it assists in bounding are irregular in shape.

In *City St. Imp. Co.* v. *Pearson, supra,* referring to section 18, it was said: "It is difficult to give this section any meaning unless it was intended to require the board of works to look into the matter at the beginning and provide for installments if it found that the assessment was likely to exceed one-half of the tax valuation on the properties." In the light of the facts disclosed in the instant case and the practical application made of this section by the board of public works herein, it is now apparent that the section was probably designed to meet such a situation as here obtains. Appellants' property herein, to all practical intents and purposes, fronts and corners upon Railroad Avenue, and, therefore, benefits especially from the improvement thereof. But in fact and in law it neither fronts nor corners upon Railroad Avenue because of the fact that the easterly line of plaintiffs' property is distant from eighteen to forty feet westerly from the westerly line of Railroad Avenue, and a portion of Lane Street intervenes between the westerly line of Railroad Avenue and the easterly line of appellants' property. Therefore, under the front-foot plan of assessment appellants could not be made

191 Cal.—10

to pay any portion of the cost because their property does not front upon the improvement, and the quarter block in which it is contained is neither adjoining nor cornering upon the ˙crossing. Under these circumstances, if the board should determine, as it evidently did here, that the improvement was not of more than local benefit or importance, and therefore did not justify the creation of an assessment district, there was no method available by which appellants' property could be made to bear its proper portion of the cost except by proceeding under some method devised pursuant to the authorization contained in section 18.

Appellants contend that if it be determined that the provisions of section 18 were properly applicable to the situation here obtaining, the proceedings herein were nevertheless void because of the absence of notice to the property owners sought to be charged sufficient to confer jurisdiction and ˙to satisfy the requirements of due process. This contention must be sustained. **[3]** Such notice is not required where the legislature itself determines the amount of the benefits and the property to be benefited, either by describing the property to be charged (*Miller & Lux* v. *Sacramento etc. Drainage Dist.*, 182 Cal. 252, 265 [187 Pac. 1041]), or by establishing a rule or criterion which will automatically determine the property to be charged when applied to the physical facts, such as the ''front-foot'' rule. (*Hadley* v. *Dague*, 130 Cal. 217 [62 Pac. 500]; *French* v. *Barber Asphalt Pav. Co., supra; Louisville* v. *Barber Asphalt Pav. Co.*, 197 U. S. 430 [49 L. Ed. 819, 25 Sup. Ct. Rep. 466, see, also, Rose's U. S. Notes].) The reason for this is that the property owners are conclusively presumed to have been heard through their representatives in the legislature. (*Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983].) **[4]** It is also true that for the purposes of the instant case the board of supervisors is the legislature. (*Larsen* v. *San Francisco, supra.*) But the supervisors in this case did not determine either the property to be charged or the benefits to be charged against it, nor did they fix any rules by which these were to be determined. These were determined by the board of public works, and never even reported to the supervisors.

**[5]** Where, as here, the determination of the property to be charged and˙ the benefits to accrue thereto is committed to an administrative board, due process requires that the

property owners affected thereby shall be given adequate notice and an opportunity to be heard upon both these questions. (*Brookes* v. *City of Oakland,* 160 Cal. 423 [117 Pac. 433]; *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792 [Ann. Cas. 1918D, 255, 162 Pac. 97].) **[6]** No such notice was given in this case. The board of public works adopted a resolution describing the property to be charged which was spread upon its own records, and a map showing the location thereof which remained in its own files. Its resolution of intention, which was posted in its office and published, not only failed to describe any property to be charged, but it contained no hint or suggestion that any property would be charged other than that chargeable under the front-foot rule. Notices were posted along the line of the improvement and in front of the quarter blocks in which appellants' property is situate. But they merely contained a brief description of the proposed improvement and a reference to the resolution of intention for further particulars. If appellants, seeing those notices, had been led thereby to examine the resolution of intention, they would have found therein a description of the proposed improvement, but no reference to any property to be charged therefor. They would thus naturally conclude that the assessment was to be made by the front-foot method, and knowing that their property did not front upon the improvement, or upon a quarter block cornering thereon, they would rest assured that it was not to be charged.

**[7]** In the absence of any predetermined rule established by legislative authority (such as the front-foot rule), whereby the property to be charged can be ascertained, the notice must, if not directly, at least by adequate reference, describe the property to be charged, in order that the property owners affected thereby may be accorded a real opportunity to be heard. (*Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212 [183 Pac. 809]; *People* v. *Lake Co. Water Dist.,* 183 Cal. 137 [190 Pac. 630].) The mere fact that the records and files of the board of public works contained such description and that they were open to inspection by the public in no way cures this omission. (*Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 224 [183 Pac. 809].)

There are various provisions in the ordinance for the taking of appeals by property owners affected and for

hearings thereon. **[8]** But, manifestly, an opportunity to appeal is of no value to a property owner who, because of insufficient notice has never had an adequate opportunity for a hearing in the first instance. The curative provisions in the ordinance do not and cannot operate to cure the omission of such notice as was necessary to satisfy the requirements of due process. (*Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 660 [161 Pac. 113].)

In the effort to meet this objection, respondents now contend, upon this appeal, that this was in reality a front-foot assessment; that appellants' property both fronts and corners upon the improvement, under the principle of law that the title of the lot owner extends to the center of the street. **[9]** Respondents alleged in their complaint and the court found, in effect, that the front-foot method was insufficient to authorize the board of public works to make an assessment and that it, therefore, proceeded under section 18, and they are concluded thereby upon this appeal. **[10]** But aside from this, it is perfectly clear that the procedural ordinance in its numerous references to lots "fronting on a street," "fronting on the improvement," "blocks adjoining and cornering upon the crossings," etc., has reference to the boundary line between the street and the lot, and not to the boundary line of the lot which is in the center · of the street. In the latter view, there is no such thing as a lot fronting upon a street. It would front upon an adjoining lot in the middle of the street. Moreover, the trial court found, in response to allegations of the answer, that appellants' lands do not "front, abut upon, adjoin or are contiguous to any portion of Railroad Avenue," and that "the quarter block in which they are situate is distant 18.29 feet in a straight line from the nearest point on the westerly line of Railroad Avenue." Even if we should assume that the portion of the improvement charged against appellants' property was all within an intersection of streets, still it is not chargeable against appellants' property under the front-foot rule because it does not "corner on the work," as was the case in *Martin* v. *Wagner,* 120 Cal. 623 [53 Pac. 167].

It is not necessary to consider what would have been the legal consequence if the board of public works had submitted its plan for spreading the assessment to the board of supervisors and the latter had approved and adopted

the same before ordering the work, because nothing of the sort was done. The conclusion that the notice herein was insufficient to confer jurisdiction renders it unnecessary to discuss the other points raised by appellants.

The judgment is reversed.

Lawlor, J., Lennon, J., Seawell, J., Kerrigan, J., Waste, J., and Wilbur, C. J., concurred.