[S. F. No. 11358.    In Bank.—November 1, 1924.]

ANGLO LONDON PARIS COMPANY et al., Petitioners, v. CHARLES G. JOHNSON, as Treasurer, etc., Respondent.

[1] VETERANS' WELFARE BOND ACT—SALE OF BONDS—NOTICE—PURPOSES OF.—The purpose of the requirement of the Veterans' Welfare Bond Act (Stats. 1921, p. 959) for publication of notice of time and place of the sale of the bonds is evidently twofold; first, to afford a reasonable and equal opportunity to all potential purchasers of such securities to become bidders at such sale, and, second, as the result of the competition thus evoked, to obtain for the state a reasonable and adequate price for the bonds.

[2] ID.—DEFECT OR IRREGULARITY IN NOTICE—EFFECT UPON PURPOSES. The question of the materiality of any defect or irregularity in the publication of notice of time and place of the sale of veterans' welfare bonds which does not amount to a violation of the terms of the statute is the effect of such defect or irregularity upon the twofold purposes of the requirement for such publication, or either of them, and it is reasonable to conclude that any such defect or irregularity which has not actually misled or deterred any potential bidder, and which could not reasonably have done so, may be disregarded as immaterial.

[3] ID.—MISSTATEMENT OF RATE OF INTEREST—VALIDITY OF NOTICE.— An error in one of the notices required to be published by the Veterans' Welfare Bond Act of the time and place of sale of bonds, consisting of a misstatement of the rate of interest which the bonds would bear, did not invalidate the notice where there is no suggestion that any potential bidder was in fact either misled or deterred from bidding as a result of the error in such notice.

[4] ID. — SALE OF BONDS — CHARACTER OF PROCEEDING—NOTICE.—The proceeding which culminates in the sale of such bonds is not a

proceeding *in invitum*, in which the rights of individuals may be injuriously affected and in which the legal requirements as to the giving of notice must be pursued with the utmost strictness.

(1) 36 **Cyc.**, p. 899 (1926 Anno.). (2) 36 **Cyc.**, p. 899 (1926 Anno.). (3) 36 **Cyc.**, p. 899 (1926 Anno.). (4) 36 **Cyc.**, p. 899 (1926 Anno.).

PROCEEDING in Mandamus to compel the State Treasurer to sell and deliver Veterans' Welfare Bonds. Writ granted.

The facts are stated in the opinion of the court.

McKinstry, Haber & Firebaugh for Petitioners.

U. S. Webb, Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondent.

MYERS, C. J.—This is an application for a writ of mandate to require the respondent as state treasurer to sell and deliver to petitioners at the price bid by them at a sale conducted by respondent on October 23, 1924, a certain issue of two million dollars par value of "Veterans' Welfare Bonds," pursuant to the provisions of the Veterans' Welfare Bond Act (Stats. 1921, p. 959) and of section 31 of article IV of the constitution. The respondent has refused to issue and deliver the bonds in consummation of such sale because of a question as to the validity of the sale by reason of an irregularity in the publication of notice thereof, hereinafter to be discussed.

The procedure prescribed in the act for the execution, issuance, and sale of such bonds is, briefly stated, as follows: Upon request of the veterans' welfare board, supported by a statement of its plans and projects with respect thereto, the veterans' welfare finance committee shall determine whether or not a bond issue is necessary or desirable to carry such plans and projects into execution. If it shall determine this question in the affirmative it shall adopt a resolution to this effect, authorizing and directing the state treasurer to prepare the requisite number of bonds, and specifying the aggregate number, par value, date of issuance, and date or dates of maturity, and the numerical sequence of the bonds, the annual rate of interest, the number,

numerical sequence, and amount or amounts and dates of maturity of coupons, the specific fund into which the proceeds shall be placed, and the technical form and language of the bonds and coupons. After the adoption of such resolution the bonds are required to be sold in such parcels and numbers as the state treasurer shall be directed by the Governor of the state, under seal thereof, after a resolution requesting such sale by the veterans' welfare board approved by the Governor. "Due notice" of the time and place of sale must be given by the treasurer by publication once a week during four weeks prior to such sale in one newspaper published in the city and county of San Francisco, and in one newspaper published in each of the cities of Oakland, Los Angeles, and Sacramento. "In addition to the notice last above provided for, the state treasurer may give such further notice as he may deem advisable, but the expense and cost of such additional notice shall not exceed the sum of $500.00 for each sale so advertised."

There is no controversy as to any of the facts of the present case, and it is submitted for decision upon the allegations of the petition and the general demurrer of the respondent thereto. From these it appears that all proceedings required by the statute have been duly and regularly taken and had for the issuance and sale of said bonds, with the sole possible exception of the publication of the required notice of such sale. As to the latter it is conceded that the notice as published in San Francisco, Oakland, and Los Angeles was in all respects proper and adequate. It recited the adoption on September 6, 1924, by unanimous vote of the veterans' welfare finance committee of a resolution directing the treasurer to prepare said bonds, the action of the Governor of the state, pursuant to the request of the veterans' welfare board by resolution duly adopted and passed by unanimous vote, directing the treasurer under seal to offer for sale and to sell at public auction the said two thousand bonds. It specified the time and place of sale thereof, recited the serial numbers of the bonds to be sold, and particularly specified the dates and maturities thereof, and contained also the following recital: "Each of said bonds will bear interest at the rate of 4¼% per annum, payable on the 1st day of February, 1925, and semi-annually thereafter on the 1st day of August and the 1st day of Feb-

ruary of each year after the sale of the same, . . ." and the notice was duly published in each of the cities of San Francisco, Oakland, and Los Angeles for the full time required by law. The notice as published in the city of Sacramento was also published for the full time required by law and was the same in all respects as that published in the other three cities except that in the first five publications thereof, by reason of a typographical error, the rate of interest was stated at $4\frac{1}{2}\%$ per annum in place of $4\frac{1}{4}\%$ per annum. The error was discovered on October 15th and the notice was then corrected and published as corrected daily thereafter up to and including the day of sale.

We are advised by counsel on both sides that a diligent search of the authorities reveals no case which is at all closely in point upon the question here involved, and the respondent submits the case for decision upon the brief filed in behalf of petitioners. Petitioners make two points in support of their petition: First, that the notice would have been entirely sufficient under the requirements of the statute if it had omitted all reference to the interest rate, which was therefore unnecessary and to be regarded as surplusage; second, that the notice, although containing a mistake, is nevertheless valid and sufficient unless bidders were, or might reasonably have been, misled thereby. Certainly the statute does not require the notice of sale to specify the interest rate unless this is implied in the use of the words "due notice." We do not deem it necessary to determine this question as we are in accord with petitioners upon their second point. [1] The purpose of the requirement of the statute for publication of notice of time and place of the sale of the bonds is evidently twofold: first, to afford a reasonable and equal opportunity to all potential purchasers of such securities to become bidders at such sale, and, second, as the result of the competition thus evoked, to obtain for the state a reasonable and adequate price for the bonds. [2] It follows that the question of the materiality of any defect or irregularity in the publication of notice which does not amount to a violation of the terms of the statute is the effect of such defect or irregularity upon these purposes, or either of them, and it is reasonable to conclude that any such defect or irregularity which has not actually misled or deterred any potential bidder, and which could

not reasonably have done so, may be disregarded as immaterial. Such in effect was the conclusion of the supreme court of Washington in the case of *Richards* v. *Klickitat County*, 13 Wash. 509 [43 Pac. 647]. [3] There is no suggestion herein that any potential bidder was in fact either misled or deterred from bidding as a result of the error in this notice, nor does it seem to us reasonable to suppose that such could well have been the result thereof. The notice as published in all of the papers referred in express terms to the resolution adopted by the veterans' welfare finance committee on September 6th, directing the respondent as treasurer to prepare the bonds and specifically describing the same and the provisions thereof in detail, as well as the resolution of the veterans' welfare board requesting the Governor to direct the sale of these bonds, and the action of the Governor directing the respondent, under the seal of the state of California, to make the sale thereof pursuant to such resolutions and request, all of which were public acts and matters of public record. It is evident that any potential buyer of these bonds whose attention was attracted to the notice of sale thereof and who was at all interested therein would have investigated the matter, at least to the extent of ascertaining the nature and terms of the bonds and the proceedings leading up to their issuance as embodied in those public records. Such an investigation, though but casual, would have led to a disclosure of the error in the interest rate as specified in the notice published at Sacramento. Concededly, these petitioners, who were the highest bidders for the bonds, were in nowise misled by that error, and it seems to us so highly probable as to be practically certain that no other potential bidder was so misled or was deterred thereby from attending the sale. [4] As was pointed out in a recent decision of this court involving a somewhat analogous situation (*Anglo London Paris Co.* v. *Johnson, ante,* p. 123 [228 Pac. 7]), the proceeding which culminated in the sale of these bonds was not a proceeding *in invitum,* in which the rights of individuals might be injuriously affected and in which the legal requirements as to the giving of notice must be pursued with the utmost strictness. But even in such proceedings we have given recognition to the fact that the notice, to charge a property owner, need not contain within

itself all of the information to which he is entitled, if it makes adequate reference to public records where such information may be found. (*Flynn* v. *Chiappari*, 191 Cal. 147 [215 Pac. 682].)

It is ordered that a peremptory writ of mandate issue as prayed for herein.

Lawlor, J., Richards, J., Lennon, J., Seawell, J., Shenk, J., and Waste, J., concurred.